UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMAZON.COM, INC., a Delaware corporation; AMAZON.COM SERVICES LLC, a Delaware limited liability company; and THE PROCTER & GAMBLE COMPANY, an Ohio corporation,<br><br>Plaintiffs,<br><br>v.<br><br>YANGZE HU, an individual; YUEQUAN LI, an individual; XIAOWEI CHEN, an individual; and DOES 1-10,<br><br>Defendants. | No.<br><br>**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF** |

## I.     INTRODUCTION

1.  This case involves Defendants' unlawful and expressly prohibited sale of counterfeit flying insect traps bearing the trademarks of The Procter & Gamble Company ("P&G"). Amazon.com, Inc. and Amazon.com Services LLC (collectively, "Amazon") and P&G (together with Amazon, "Plaintiffs") jointly bring this lawsuit to permanently prevent and enjoin Defendants from causing future harm to Amazon's and P&G's customers, reputations, and intellectual property ("IP"), and to hold Defendants accountable for their illegal actions.

2.  Amazon.com Services LLC owns and operates the Amazon.com store (the "Amazon Store"), and Amazon's affiliates own and operate equivalent counterpart international

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 1

stores and websites. Amazon's stores offer products and services to customers in more than 100 countries around the globe. Some of the products are sold directly by Amazon entities, while others are sold by Amazon's numerous third-party selling partners. The Amazon brand is one of the most well-recognized, valuable, and trusted brands in the world. To protect its customers and safeguard its reputation for trustworthiness, Amazon invests heavily in both time and resources to prevent counterfeit and infringing goods from being sold in its stores. In 2024, Amazon invested more than a billion dollars and employed thousands of people—including machine learning scientists, software developers, and expert investigators—who were dedicated to protecting customers, brands, selling partners, and Amazon's stores from counterfeits, fraud, and other forms of abuses.

3. P&G is a global consumer goods company that is committed to improving the lives of consumers worldwide. Founded in 1837, and headquartered in Cincinnati, Ohio, P&G has a portfolio of over 60 leading brands covering a diverse range of products, including baby care, feminine & family care, beauty care, health care, grooming, and fabric and home care. P&G's iconic product lineup includes household names that have become staples for millions of families across the United States, such as Tide, Pampers, Gillette, Olay, Crest, Oral-B, Head & Shoulders, Downy, Dawn, and Febreze among many others. One of P&G's newest brands is the Zevo line of revolutionary home pest control products. Among these are Zevo flying insect traps, which feature a durable plug-in base that uses blue and UV light to attract insects to a disposable refill cartridge. Insects get stuck on an adhesive pad in the cartridge, which is easy to remove and dispose of.

4. P&G owns, manages, enforces, licenses, and maintains IP, including various trademarks. Relevant to this Complaint, P&G owns the following registered trademarks (the "Zevo Trademarks").

| **Mark** | **Registration No. (International Classes)** |
|---|---|
| ZEVO | 5,530,814 (005, 021) |
| zevo | 7,373,783 (005, 021) |

True and correct copies of the registration certificates for the Zevo Trademarks are attached as **Exhibit A**.

5. Beginning in 2016, Defendants registered with Amazon to sell in the Amazon Store. From June 2024 through February 2025, Defendants advertised, marketed, offered, distributed, and sold counterfeit Zevo-branded products in the Amazon Store, using the Zevo Trademarks, without authorization, in order to deceive customers about the authenticity and origin of the products and the products' affiliation with P&G.

6. As a result of their illegal actions, Defendants have infringed and misused P&G's IP; breached their contracts with Amazon; willfully deceived and harmed Amazon, P&G, and their customers; compromised the integrity of the Amazon Store; and undermined the trust that customers place in Amazon and P&G. Defendants' illegal actions have caused Amazon and P&G to expend significant resources to investigate and combat Defendants' wrongdoing and to bring this lawsuit to prevent Defendants from inflicting future harm to Amazon, P&G, and their customers.

## II.    PARTIES

7. Amazon.com, Inc. is a Delaware corporation with its principal place of business in Seattle, Washington. Amazon.com Services LLC is a Delaware company with its principal place of business in Seattle, Washington.

8. P&G is an Ohio corporation with its principal place of business in Cincinnati, Ohio.

9. Defendants are a collection of individuals and entities, both known and unknown, who conspired and operated in concert with each other to engage in the counterfeiting scheme

alleged in this Complaint. Defendants operated, controlled, and/or were responsible for the Jomspo E&C selling account (the "Selling Account"). Defendants are subject to liability for their wrongful conduct both directly and under principles of secondary liability including, without limitation, *respondeat superior*, vicarious liability, and/or contributory infringement.

10. On information and belief, Defendant Yangze Hu is an individual residing in China. Defendant Hu personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and he derived a direct financial benefit from that wrongful conduct.

11. On information and belief, Defendant Yuequan Li is an individual residing in China. Defendant Li personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and he derived a direct financial benefit from that wrongful conduct.

12. On information and belief, Defendant Xiaowei Chen is an individual residing in China. On further information and belief, Defendant Chen personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and Chen derived a direct financial benefit from that wrongful conduct.

13. On information and belief, Defendants Does 1-10 (the "Doe Defendants") are individuals and/or entities working in active concert with each other and the named Defendants to knowingly and willfully manufacture, import, advertise, market, offer, distribute, and sell counterfeit Zevo-branded products. The identities of the Doe Defendants are presently unknown to Plaintiffs.

### III.   JURISDICTION AND VENUE

14. The Court has subject matter jurisdiction over P&G's Lanham Act claim for trademark counterfeiting and trademark infringement, and Amazon's and P&G's Lanham Act claims for false designation of origin, pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a). The Court has subject matter jurisdiction over Amazon's breach of contract claim and

Amazon's and P&G's claims for violation of the Washington Consumer Protection Act, pursuant to 28 U.S.C. §§ 1332 and 1367.

15. The Court has personal jurisdiction over Defendants because they transacted business and committed tortious acts within and directed to the State of Washington, and Amazon's and P&G's claims arise from those activities. Defendants affirmatively undertook to do business with Amazon, a corporation with its principal place of business in Washington, and sold in the Amazon Store products bearing counterfeit versions of the Zevo Trademarks and which otherwise infringed P&G's IP. Additionally, Defendants shipped products bearing counterfeit versions of the Zevo Trademarks to consumers in Washington. Each Defendant committed, or facilitated the commission of, tortious acts in Washington and has wrongfully caused Amazon and P&G substantial injury in Washington.

16. Further, Defendants have consented to the jurisdiction of this Court by agreeing to the Amazon Services Business Solutions Agreement ("BSA"), which provides that the "Governing Courts" for claims to enjoin infringement or misuse of IP rights and claims related to the sale of counterfeit products in the Amazon Store are the state or federal courts located in King County, Washington.

17. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in the Western District of Washington. Venue is also proper in this Court because Defendants consented to it under the BSA.

18. Pursuant to Local Civil Rule 3(e), intra-district assignment to the Seattle Division is proper because the claims arose in this Division, where (a) Amazon resides, (b) injuries giving rise to suit occurred, and (c) Defendants directed their unlawful conduct.

### IV.    FACTS

**A.    Amazon's Efforts to Prevent the Sale of Counterfeit Goods.**

19. Amazon works hard to build and protect the reputation of its stores as places where customers can conveniently select from a wide array of authentic goods and services at

competitive prices. Amazon invests vast resources to ensure that when customers make purchases in Amazon's stores—either directly from Amazon entities or from one of its millions of third-party sellers—customers receive authentic products made by the true manufacturer of those products.

20. A small number of bad actors seek to take advantage of the trust customers place in Amazon by attempting to create Amazon selling accounts to advertise, market, offer, distribute, and sell counterfeit products. These bad actors seek to misuse and infringe the trademarks and other IP of the true manufacturers of those products to deceive Amazon and its customers. This unlawful and expressly prohibited conduct undermines the trust that customers, sellers, and manufacturers place in Amazon, and tarnishes Amazon's brand and reputation, thereby causing irreparable harm to Amazon.

21. Amazon prohibits the sale of inauthentic and fraudulent products and is constantly innovating on behalf of its customers and working with brands, manufacturers, rights owners, and others to improve the detection and prevention of counterfeit products from ever being offered to customers in Amazon's stores. Amazon employs dedicated teams of software engineers, research scientists, program managers, and investigators to prevent counterfeits from being offered in Amazon's stores. Amazon's systems automatically and continuously scan thousands of data points to prevent, detect, and remove counterfeits from its stores and to terminate the selling accounts of bad actors before they can offer counterfeit products. When Amazon identifies issues based on this feedback, it takes action to address them. Amazon also uses this intelligence to improve its proactive prevention controls. In 2024, Amazon's proactive controls blocked more than 99% of suspected infringing listings before a brand ever had to find and report them.

22. In 2017, Amazon launched Brand Registry, a free service that offers rights owners an enhanced suite of tools for monitoring and reporting potential instances of infringement, regardless of their relationship with Amazon. Brand Registry delivers automated brand protections that use machine learning to predict infringement and proactively protect brands' IP.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 6

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

Brand Registry also provides a powerful Report a Violation Tool that allows brands to search for, identify, and report potentially infringing products using state-of-the-art image search technology.

23. In 2018, Amazon launched Transparency, a product serialization service that effectively eliminates counterfeits for enrolled products. Brands enrolled in Transparency can apply a unique 2D code to every unit they manufacture, which allows Amazon, other retailers, law enforcement, and customers to determine the authenticity of any Transparency-enabled product, regardless of where the product was purchased. More than 2.5 billion product units have been verified as genuine through Amazon's Transparency program.

24. In 2019, Amazon launched Project Zero, a program to empower brands to help Amazon drive counterfeits to zero. Project Zero introduced a novel self-service counterfeit removal tool that enables brands to remove counterfeit listings directly from Amazon's stores. This enables brands to take down counterfeit product offerings on their own within minutes. Since launch, more than 35,000 brands have enrolled in Project Zero.

25. Amazon uses advanced technology and expert human reviewers to verify the identities of potential sellers. When prospective sellers apply to sell in Amazon's stores, they are required to provide a form of government-issued photo ID, along with other information about their business. Amazon employs advanced identity detection methods such as document forgery detection, image and video verification, and other technologies to quickly confirm the authenticity of government-issued IDs and whether such IDs match the individual applying to sell in Amazon's stores. In addition to verifying IDs, Amazon's systems analyze numerous data points, including behavior signals and connections to previously detected bad actors, to detect and prevent risks.

26. Similarly, throughout the selling experience in Amazon's stores, Amazon's systems monitor selling accounts to identify anomalies or changes in account information, behaviors, and other risk signals. In the event that Amazon identifies a risk of fraud or abuse, it

promptly initiates an investigation using automated and/or human review, may request additional information, and swiftly removes bad actors from its stores.

27. In addition to the measures discussed above, Amazon actively cooperates with rights owners and law enforcement to identify and prosecute bad actors suspected of engaging in illegal activity. Lawsuits, like this one, as well as criminal referrals, are integral components of Amazon's efforts to combat counterfeits and other inauthentic products. Since its launch in 2020, Amazon's Counterfeit Crimes Unit has pursued more than 24,000 bad actors through litigation and criminal referrals to law enforcement.

### B. P&G and Its Anti-Counterfeiting Efforts.

28. Protecting consumers against counterfeits is consistent with P&G's purpose to touch and improve the lives of consumers in the U.S. and around the world. P&G's products are used by billions of consumers as part of their daily routines and lives. As such, P&G takes counterfeiting very seriously.

29. P&G manufactures its products pursuant to good manufacturing practices and in compliance with applicable laws and regulations. This is in sharp contrast to counterfeiters who often manufacture substandard products without any regard for consumer health and safety or product integrity.

30. Innovation has been core to P&G for more than 185 years and is key to the Company's future growth. P&G invests heavily in creating and manufacturing products that delights its consumers. P&G devotes significant resources on research and development to enable P&G to create new products, upgrade existing products, and improve its manufacturing processes. P&G also builds brands through innovative marketing campaigns that convey P&G's products' benefits and superior product performance. P&G relies on intellectual property to protect these investments and the consumer trust that P&G has earned over its long history.

31. Counterfeiters' theft of P&G intellectual property encroaches upon P&G's market share, suppresses profitability, hinders business growth, and hurts the equity of our brands.

Counterfeiters' theft frustrates P&G's capability to innovate and slows down the pace of upgrades.

32. P&G goes to great lengths to protect consumers from counterfeits of its products, and it is committed to leading efforts to combat counterfeit products. P&G regularly assists law enforcement and customs officials with their intellectual property rights enforcement programs by offering expertise and cooperation to identify, investigate, and seize counterfeit products at the manufacturing sites or within supply chain. P&G utilizes both internal and external resources to combat counterfeit and infringing products. P&G works with a third-party brand protection service vendors on the detection and removal of product listings violating P&G's IP rights.

33. P&G is currently enrolled in Brand Registry and Project Zero. P&G actively used the tools and protections provided by these programs in response to the counterfeiting activity including that described in this Complaint.

**C.   Defendants Created an Amazon Selling Account, Agreed Not to Sell Counterfeit Goods, and Agreed to Reimburse Amazon for Damages Arising from Customer Refunds.**

34. At various times between February 2016 and February 2025, Defendants established, controlled, and operated the Jomspo E&C Selling Account. Defendants used this Selling Account to advertise, market, offer, distribute, and sell, counterfeit Zevo-branded products. In connection with the Selling Account, Defendants provided Amazon with names, email addresses, phone numbers, tax identification numbers, banking information, and either government-issued identification for an individual acting on behalf of the Selling Account or a copy of a government-issued record or tax document for the entity operating the Selling Account. Plaintiffs were able to identify Defendants as the primary recipients of the proceeds of the counterfeiting sales for each selling account based on investigation of certain financial information that Defendants provided to Amazon.

35. To become a third-party seller in the Amazon Store, an applicant is required to agree to the BSA, which governs the seller's access to and use of Amazon's services and states Amazon's rules for selling in the Amazon Store. By entering into the BSA, each seller represents

and warrants that it "will comply with all applicable Laws in [the] performance of its obligations and exercise of its rights" under the BSA. A true and correct copy of the applicable version of the BSA, namely, the version Defendants last agreed to when using Amazon's services, is attached as **Exhibit B**.

36. Under the terms of the BSA, Amazon specifically identifies the sale of counterfeit goods as "deceptive, fraudulent, or illegal activity" that violates Amazon's policies, and Amazon reserves the right to withhold payments and terminate the selling account of any bad actor who engages in such conduct. Ex. B, ¶¶ 2-3. The BSA requires the seller to defend, indemnify, and hold Amazon harmless against any claims or losses arising from the seller's "actual or alleged infringement of any Intellectual Property Rights." *Id.* ¶ 6.1.

37. Additionally, the BSA incorporates, and sellers therefore agree to be bound by, Amazon's Anti-Counterfeiting Policy, the applicable version of which is attached as **Exhibit C**. The Anti-Counterfeiting Policy expressly prohibits the sale of counterfeit goods in the Amazon Store:

- The sale of counterfeit products is strictly prohibited.
- You may not sell any products that are not legal for sale, such as products that have been illegally replicated, reproduced, or manufactured[.]
- You must provide records about the authenticity of your products if Amazon requests that documentation[.]

Failure to abide by this policy may result in loss of selling privileges, funds being withheld, destruction of inventory in our fulfillment centers, and other legal consequences.

*Id.*

38. Amazon's Anti-Counterfeiting Policy further describes Amazon's commitment to preventing the sale and distribution of counterfeit goods in the Amazon Store, and describes the consequences of selling inauthentic products:

- Sell Only Authentic and Legal Products. It is your responsibility to source, sell, and fulfill only authentic products that are legal for sale. Examples of prohibited products include:
    - Bootlegs, fakes, or pirated copies of products or content

- - o  Products that have been illegally replicated, reproduced, or manufactured
    - o  Products that infringe another party's intellectual property rights
  - Maintain and Provide Inventory Records. Amazon may request that you provide documentation (such as invoices) showing the authenticity of your products or your authorization to list them for sale. You may remove pricing information from these documents, but providing documents that have been edited in any other way or that are misleading is a violation of this policy and will lead to enforcement against your account.
  - Consequences of Selling Inauthentic Products. If you sell inauthentic products, we may immediately suspend or terminate your Amazon selling account (and any related accounts), destroy any inauthentic products in our fulfillment centers at your expense, and/or withhold payments to you.
  - Amazon Takes Action to Protect Customers and Rights Owners. Amazon also works with manufacturers, rights holders, content owners, vendors, and sellers to improve the ways we detect and prevent inauthentic products from reaching our customers. As a result of our detection and enforcement activities, Amazon may:
    - o  Remove suspect listings.
    - o  Take legal action against parties who knowingly violate this policy and harm our customers. In addition to criminal fines and imprisonment, sellers and suppliers of inauthentic products may face civil penalties including the loss of any amounts received from the sale of inauthentic products, the damage or harm sustained by the rights holders, statutory and other damages, and attorney's fees.
  - Reporting Inauthentic Products. We stand behind the products sold on our site with our A-to-z Guarantee, and we encourage rights owners who have product authenticity concerns to notify us. We will promptly investigate and take all appropriate actions to protect customers, sellers, and rights holders. You may view counterfeit complaints on the Account Health page in Seller Central.

*Id.*

39.  Additionally, under the BSA, sellers agree that the information and documentation they provide to Amazon in connection with their selling accounts—such as identification, contact, and banking information—will, at all times, be valid, truthful, accurate, and complete. Specifically, the BSA requires that:

- As part of the application process, you must provide us with your (or your business') legal name, address, phone number and e-mail address, as well as any other information we may request. Ex. B. ¶ 1.

- You will use only a name you are authorized to use in connection with a[ny Amazon] Service and will update all of the information you provide to us in connection with the Services as necessary to ensure that it at all times remains accurate, complete, and valid. *Id*. ¶ 2.

- Each party represents and warrants that: (a) if it is a business, it is duly organized, validly existing and in good standing under the Laws of the country in which the business is registered and that you are registering for the Service(s) within such country; (b) it has all requisite right, power, and authority to enter this Agreement, perform its obligations, and grant the rights, licenses, and authorizations in this Agreement; (c) any information provided or made available by one party to another party or its Affiliates is at all times accurate and complete[.] *Id*. ¶ 5.

40. When Defendants registered as third-party sellers in the Amazon Store, and established their Selling Account, they agreed not to advertise, market, offer, distribute, or sell counterfeit products, and agreed to provide Amazon with accurate and complete information and to ensure that information remained accurate and complete.

41. Defendants also agreed to reimburse Amazon for any amounts that Amazon was forced to refund to customers who purchased products from Defendants. The BSA provides:

- You will defend, indemnify, and hold harmless Amazon … against any … loss, damage, settlement cost, expense, or other liability … arising from or related to … Your Products, including the … refund … thereof[.] *Id.* § 6.1.

- If we determine that your actions or performance may result in returns, chargebacks, claims, disputes, violations of our terms or policies, violations of law or other risks to Amazon or third parties, then we may in our sole discretion withhold any payments to you for as long as we determine any related risks to Amazon or third parties persist. For any amounts that we determine you owe us, we may … collect payment or reimbursement from you by any other lawful means. *Id.* § 2.

**D.    Defendants' Sale of Counterfeit Zevo-Branded Products.**

42. From June 2024 through February 2025, Defendants advertised, marketed, offered, distributed, and sold counterfeit Zevo-branded products in the Amazon Store through the Jomspo E&C Selling Account. The counterfeit Zevo-branded products sold by Defendants are identified and described below.

43. In February 2025, Amazon provided P&G with physical samples and images of Zevo-branded products from quarantined inventory of the Jomspo E&C Selling Account that Defendants advertised and offered for sale as a genuine Zevo-branded products. P&G has

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 12

examined the physical samples and images of the products and confirmed that each bears the Zevo Trademarks. P&G has determined that the products are counterfeit based on deviations from P&G's authentic products and packaging.

### E.    Defendants' Coordinated Sale of Counterfeit Zevo-Branded Products.

44.    On information and belief, Defendants operated in concert with one another in their advertising, marketing, offering, distributing, and selling of counterfeit Zevo-branded products. Defendants are associated through their operation of the Selling Account and use of the same financial account to receive proceeds from the sale of counterfeit Zevo-branded products. In addition, Defendants Hu and Li made substantial payments to Defendant Chen during their sale of counterfeit Zevo-branded products, and Chen has been linked to the sale of other counterfeit products in the Amazon Store. On information and belief, Chen is directing the sale of counterfeit products by others and is profiting from such sales.

### F.    Amazon Shut Down Defendants' Selling Account.

45.    By selling counterfeit and infringing Zevo-branded products, Defendants falsely represented to Amazon and its customers that the products Defendants sold were genuine products made by P&G. Defendants also knowingly and willfully used P&G IP in connection with the advertising, marketing, offering, distributing, and selling of counterfeit and infringing Zevo-branded products.

46.    At all times, Defendants knew they were prohibited from violating third-party IP rights or any applicable laws while selling products in the Amazon Store, from providing inaccurate information to Amazon and its customers, from misrepresenting the authenticity of the products sold, and from misleading Amazon and its customers through their sale of inauthentic P&G products. Defendants have breached the terms of their agreements with Amazon; deceived Amazon's customers and Amazon; infringed and misused the IP rights of P&G; harmed the integrity of and customer trust in the Amazon Store; and tarnished Amazon's and P&G's brands.

47. After Amazon verified Defendants' sale of counterfeit Zevo-branded products, it blocked Defendants' Selling Account. In doing so, Amazon exercised its rights under the BSA to protect its customers and the reputations of Amazon and P&G.

48. Pursuant to Amazon's A-to-z guarantee, Amazon also proactively issued full refunds to customers who purchased the counterfeit Zevo-branded products from Defendants. Defendants have not reimbursed Amazon.

## V.   CLAIMS

### FIRST CLAIM
*(by P&G against all Defendants)*
**Trademark Counterfeiting and Trademark Infringement – 15 U.S.C. § 1114**

49. Plaintiff P&G incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

50. Defendants' activities constitute counterfeiting and infringement of the Zevo® Trademarks as described in the paragraphs above.

51. P&G owns the Zevo Trademarks and it advertises, markets, offers, distributes, and sells its products using the Zevo Trademarks. P&G uses the Zevo Trademarks to distinguish its products from the products and related items of others in the same or related fields.

52. Because of P&G's long, continuous, and exclusive use of the Zevo Trademarks, the Trademarks are understood by customers and the public to signify products from P&G.

53. The ZEVO mark achieved "incontestable status" on Feb 26, 2024, for classes 005 and 021, meeting the requirements of Section 15 of the Trademark Act, 15 U.S.C. §1065.

54. Defendants unlawfully advertised, marketed, offered, distributed, and sold products bearing counterfeit and infringing versions of the Zevo Trademarks with the intent and likelihood of causing customer confusion, mistake, and deception as to the products' source, origin, and authenticity. Specifically, Defendants intended customers to believe, incorrectly, that the products originated from, were affiliated with, and/or were authorized by P&G and likely caused such erroneous customer beliefs.

55. As a result of Defendants' wrongful conduct, P&G is entitled to recover its actual damages, Defendants' profits attributable to the infringement, treble damages, and attorneys' fees pursuant to 15 U.S.C. § 1117(a) and (b). Alternatively, P&G is entitled to statutory damages under 15 U.S.C. § 1117(c) for Defendants' use of counterfeit marks.

56. P&G is further entitled to injunctive relief, including an order impounding all counterfeit and infringing products and promotional materials in Defendants' possession. P&G has no adequate remedy at law for Defendants' wrongful conduct because, among other things: (a) the Zevo Trademarks are unique and valuable properties that have no readily-determinable market value; (b) Defendants' counterfeiting and infringing activities constitute harm to P&G and P&G's reputation and goodwill such that P&G could not be made whole by any monetary award; (c) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin, or authenticity of the counterfeit and infringing materials; and (d) the resulting harm to P&G, due to Defendants' wrongful conduct, is likely to be continuing.

**SECOND CLAIM**
*(by P&G and Amazon against all Defendants)*
**False Designation of Origin – 15 U.S.C. § 1125(a)**

57. Plaintiffs incorporate by reference the allegations of the preceding paragraphs as though set forth herein.

58. P&G owns the Zevo Trademarks and advertises, markets, offers, distributes, and sells its products using the trademarks described above, and uses the trademarks to distinguish its products from the products and related items of others in the same or related fields.

59. Because of P&G's long, continuous, and exclusive use of the Zevo Trademarks, the Trademarks have come to mean, and are understood by customers, users, and the public, to signify products from P&G.

60. Amazon's reputation for trustworthiness is at the heart of its relationship with customers. Defendants' actions in selling counterfeits pose a threat to Amazon's reputation because they undermine and jeopardize customer trust in the Amazon Store.

61. Defendants' unlawfully advertised, marketed, offered, distributed, and sold products bearing counterfeit versions of the Zevo Trademarks with the intent and likelihood of causing customer confusion, mistake, and deception as to the products' source, origin, and authenticity. Upon information and belief, Defendants' wrongful conduct misleads and confuses customers and the public as to the origin and authenticity of the goods and services advertised, marketed, offered, distributed, or sold in connection with the Zevo Trademarks and wrongfully trades upon P&G's goodwill and business reputation.

62. Further, Defendants deceived Amazon and its customers about the authenticity of the products they were advertising, marketing, offering, distributing, and selling, in direct and willful violation of the BSA and Amazon's Anti-Counterfeiting Policies. Defendants' deceptive acts were material to Amazon's decision to allow Defendants to sell their products in the Amazon Store because Amazon would not have allowed Defendants to do so but for their deceptive acts.

63. Defendants' misconduct has also caused Amazon to expend significant resources to investigate and combat Defendants' wrongdoing and to bring this lawsuit to prevent Defendants from causing further harm to Amazon and its customers. Defendants' illegal acts have caused irreparable injury to Amazon and, on information and belief, that injury is ongoing at least to the extent that Defendants continue to establish selling accounts under different or false identities. An award of monetary damages alone cannot fully compensate Amazon for its injuries, and thus Amazon lacks an adequate remedy at law.

64. Defendants' conduct constitutes (a) false designation of origin, (b) false or misleading description, and (c) false or misleading representation that products originate from or are authorized by P&G, all in violation of 15 U.S.C. § 1125(a)(1)(A).

65. Plaintiffs are entitled to an injunction against Defendants, their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, as set forth in the Prayer for Relief below, along with attorneys' fees and costs in investigating and bringing this lawsuit. Defendants' acts have caused irreparable injury to

Plaintiffs. On information and belief, that injury is continuing. An award of monetary damages cannot fully compensate Plaintiffs for their injuries, and Plaintiffs lack an adequate remedy at law.

66. P&G is further entitled to recover Defendants' profits, P&G's damages for its losses, and P&G's costs to investigate and remediate Defendants' conduct and bring this action, in an amount to be determined. P&G is also entitled to the trebling of any damages award as allowed by law. Amazon is also entitled to recover its damages arising from Defendants' sale of counterfeit products in the Amazon Store.

### THIRD CLAIM
*(by P&G and Amazon against all Defendants)*
**Violation of Washington Consumer Protection Act, RCW 19.86.010, *et seq.***

67. Plaintiffs incorporate by reference the allegations of the preceding paragraphs as though set forth herein.

68. Defendants' advertising, marketing, offering, distributing, and selling of counterfeit Zevo-branded products constitute unfair and deceptive acts or practices in the conduct of trade or commerce, in violation of RCW 19.86.020.

69. Defendants' advertising, marketing, offering, distributing, and selling of counterfeit Zevo-branded products harm the public interest by deceiving customers about the authenticity, origins, and sponsorship of the products.

70. Defendants' advertising, marketing, offering, distributing, and selling of counterfeit Zevo-branded products directly and proximately causes harm to and tarnishes Plaintiffs' reputations and brands, and damages their business and property interests and rights.

71. Accordingly, Plaintiffs seek to enjoin further violations of RCW 19.86.020 and recover from Defendants their attorneys' fees and costs. P&G further seeks to recover from Defendants its actual damages, trebled, and Amazon further seeks to recover from Defendants its actual damages, trebled, arising from Defendants' sale of counterfeit products.

## FOURTH CLAIM
*(by Amazon.com Services LLC[1] against all Defendants)*
**Breach of Contract**

72. Plaintiff Amazon incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

73. Defendants established an Amazon selling account and entered into Amazon's BSA, a binding and enforceable contract between Defendants and Amazon. Defendants also contractually agreed to be bound by the policies incorporated by reference into the BSA, including Amazon's Anti-Counterfeiting Policy and other policies as maintained on the Amazon seller website.

74. Amazon performed all obligations required of it under the terms of the contract with Defendants or was excused from doing so.

75. Defendants' sale and distribution of counterfeit Zevo-branded products materially breached the BSA and the Anti-Counterfeiting Policy in numerous ways. Among other things, Defendants' conduct constitutes infringement and misuse of the IP rights of P&G.

76. Additionally, Defendants breached the BSA by failing to reimburse Amazon for the amounts it paid to refund customers who purchased counterfeit products from Defendants.

77. Defendants' breaches have caused significant harm to Amazon, and Amazon is entitled to damages in an amount to be determined.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for the following relief:

A. That the Court enter an order permanently enjoining Defendants, their officers, agents, servants, employees, and attorneys, and all others in active concert or participation with them, from:

    (i) selling counterfeit or infringing products in Amazon's stores;

    (ii) selling counterfeit or infringing products to Amazon or any Amazon affiliate;

---

[1] For the Fourth Claim only, "Amazon" shall refer to Amazon.com Services LLC only.

    (iii) importing, manufacturing, producing, distributing, circulating, offering to sell, selling, promoting, or displaying any product using any simulation, reproduction, counterfeit, copy, or colorable imitation of P&G's brand or trademarks, or which otherwise infringes P&G's IP, in any store or in any medium; and

    (iv) assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (iii) above;

B. That the Court enter judgment in Plaintiffs' favor on all claims brought by them;

C. That the Court enter an order pursuant to 15 U.S.C. § 1118 impounding and permitting destruction of all counterfeit and infringing products bearing the Zevo Trademarks or that otherwise infringe P&G's IP, and any related materials, including business records and materials used to reproduce any infringing products, in Defendants' possession or under their control;

D. That the Court enter an order requiring Defendants to provide Plaintiffs a full and complete accounting of all amounts due and owing to Plaintiffs as a result of Defendants' unlawful activities;

E. That the Court enter an order requiring Defendants to pay all general, special, and actual damages which P&G has sustained, or will sustain, as a consequence of Defendants' unlawful acts, plus Defendants' profits from the unlawful conduct described herein, together with its statutory damages, and that such damages be enhanced, doubled, or trebled as provided for by 15 U.S.C. § 1117, RCW 19.86.020, or otherwise allowed by law, and that Amazon's damages, plus Defendants' profits, related to Defendants' activities involving the sale of counterfeit products be enhanced, doubled, or trebled as provided by 15 U.S.C. § 1117, RCW 19.86.020, or otherwise allowed by law;

F. That the Court enter an order requiring Defendants to pay the maximum amount of prejudgment interest authorized by law;

G.  That the Court enter an order requiring Defendants to pay the costs of this action and Plaintiffs' reasonable attorneys' fees incurred in prosecuting this action, as provided for by 15 U.S.C. § 1117, RCW 19.86.020, or otherwise allowed by law;

H.  That the Court enter an order requiring that identified financial institutions restrain and transfer to Plaintiffs all amounts arising from Defendants' unlawful counterfeiting activities as set forth in this lawsuit, up to a total amount necessary to satisfy monetary judgment in this case; and

I.  That the Court grant Plaintiffs such other, further, and additional relief as the Court deems just and equitable.

DATED this 8th day of December, 2025.

DAVIS WRIGHT TREMAINE LLP
*Attorneys for Plaintiffs*

*/s/ Scott Commerson*
Scott Commerson, WSBA #58085
350 South Grand Avenue, 27th Floor
Los Angeles, CA 90071-3460
Tel: (213) 633-6800
Fax: (213) 633-6899
Email: scottcommerson@dwt.com