UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMAZON.COM INC., et al.,

Plaintiff(s),

v.

YANGZE HU, et al.,

Defendant(s).

CASE NO. C25-2493-KKE

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

Plaintiff The Procter & Gamble Company ("P&G") includes in its portfolio of brands the Zevo line of home pest control products. Dkt. No. 1 ¶ 3. P&G owns two Zevo registered trademarks ("Zevo Trademarks"). *Id.* ¶ 4. Together with Plaintiffs Amazon.com, Inc. and Amazon.com Services LLC (collectively "Amazon"), P&G filed this action, alleging that Defendants[1] sold counterfeit Zevo products via Amazon's store. *Id.* ¶ 5. Defendants have not appeared or otherwise defended this action, and the Court entered an order of default against them. Dkt. No. 18.

[1] The Defendants are Yangze Hu, Yuequan Li, and Xiaowei Chen (collectively "Defendants"). *See* Dkt. No. 1 ¶¶ 10–12. Plaintiffs previously dismissed the Doe Defendants. *See id.* ¶ 13, Dkt. No. 19.

Plaintiffs have now moved for entry of default judgment. Dkt. No. 22.[2] Plaintiffs have shown that they are entitled to default judgment on their claims against Defendants, and the Court will grant Plaintiffs' motion and award the damages and injunctive relief Plaintiffs request.

## I. BACKGROUND

Plaintiffs allege that, between February 2016 and February 2025, Defendants advertised, marketed, offered, distributed, and sold counterfeit Zevo-branded products via its Jomspo E&C selling account on Amazon, using Zevo Trademarks without authorization to deceive customers about the authenticity and origin of the products and the products' affiliation with Zevo. Dkt. No. 1 ¶ 34. In this action, P&G asserts claims for trademark counterfeiting and infringement against Defendants. *Id.* ¶¶ 49–56. Plaintiffs also bring claims for false designation of origin and for violation of Washington's Consumer Protection Act ("CPA"). *Id.* ¶¶ 57–71. Amazon.com Services LLC separately brings breach of contract claims against each Defendant. *Id.* ¶¶ 72–77.

After Defendants were served the complaint and failed to respond by the deadline, the Court entered default against Defendants in May 2026. Dkt. No. 18. Plaintiffs filed a motion for default judgment in August 2026. Dkt. No. 22. The Court will grant Plaintiffs' motion for default judgment for the following reasons.

## II. ANALYSIS

### A. The Court Has Jurisdiction over the Subject Matter and the Parties.

Before entering default judgment, the Court must confirm that it has both subject matter and personal jurisdiction. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties.").

[2] The Court refers to the parties' briefing by CM/ECF page number.

*1. The Court Has Subject Matter Jurisdiction over Plaintiffs' Claims.*

The Court has federal question jurisdiction over Plaintiffs' claims for trademark infringement, false designation of origin, and false advertising, and supplemental jurisdiction over the remaining claims. Dkt. No. 1 ¶ 14.

*2. The Court Has Personal Jurisdiction over Defendants.*

The Court also has personal jurisdiction over Defendants. A forum selection clause alone can confer personal jurisdiction. *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1406–07 (9th Cir. 1994). The Business Solutions Agreement ("BSA") between Amazon and Defendants provides that Amazon may bring claims related to counterfeit products in the "Governing Courts," and the BSA defines "Governing Courts" as any state or federal court in King County, Washington, which includes this Court. Dkt. No. 5-2 at 13. Accepting Plaintiffs' factual allegations as true, the Court has personal jurisdiction over Defendants.

**B. Legal Standards on a Motion for Default Judgment**

The Court's decision to enter a default judgment is discretionary. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The Court "ordinarily disfavor[s]" default judgment because "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). In considering a motion for default judgment, the Court accepts "the well-pleaded factual allegations" as true, but "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (cleaned up).

When considering whether to exercise its discretion to enter a default judgment, the Court may consider the following *Eitel* factors:

> (1) the possibility of prejudice to the plaintiff,
> (2) the merits of plaintiff's substantive claim,
> (3) the sufficiency of the complaint,

(4) the sum of money at stake in the action;
(5) the possibility of a dispute concerning material facts;
(6) whether the default was due to excusable neglect, and
(7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471–72.

The Western District of Washington also requires a party seeking default judgment to provide "a declaration and other evidence establishing plaintiff's entitlement to a sum certain and to any nonmonetary relief sought." Local Civil Rules W.D. Wash. LCR 55(b)(2). "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

**C. Plaintiffs are Entitled to Default Judgment Against Defendants.**

The Court applies the *Eitel* factors to this case and finds that they favor a default judgment for all Plaintiffs' claims.

*1. Possibility of Prejudice to Plaintiffs*

For the first *Eitel* factor, the Court analyzes the possibility of prejudice to Plaintiffs. Prejudice exists when "the plaintiff has no recourse for recovery other than default judgment." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) (cleaned up).

In this case, Defendants have failed to respond to or otherwise defend against Plaintiffs' complaint. Without a default judgment, Plaintiffs would have no recourse. Therefore, the Court finds the first *Eitel* factor favors a default judgment.

*2. Sufficiency and Merits of Plaintiffs' Complaint*

The Court analyzes the second and third *Eitel* factors—the merits of Plaintiffs' substantive claim and the sufficiency of the complaint—together. *See, e.g.*, *Curtis*, 33 F. Supp. 3d at 1211. For the following reasons, the Court finds that Plaintiffs have alleged facts in their complaint showing that Defendants are liable on the claims asserted.

a. <u>P&G's Trademark Counterfeiting and Infringement Claim</u>

As noted above, P&G alleges that Defendants counterfeited and infringed P&G's Zevo Trademarks, in violation of 15 U.S.C. § 1114. Dkt. No. 1 ¶¶ 49–56.

To prevail on a trademark infringement claim under 15 U.S.C. § 1114, a plaintiff must show that the defendant used (1) a reproduction, counterfeit, copy or colorable imitation of the plaintiff's registered trademark; (2) without the plaintiff's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution or advertising of any goods; (5) where such use is likely to cause confusion, or to cause a mistake or to deceive. *Amazon.com v. Kurth*, No. 2:18-cv-00353-RAJ, 2019 WL 3426064, at *2 (W.D. Wash. July 30, 2019).

For the fifth element—the likelihood of confusion—a court tests whether the defendant's use of the plaintiff's trademark is likely to confuse a reasonably prudent consumer in the marketplace as to the origin of the product. *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998). However, counterfeit marks are inherently confusing. *See Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) ("[C]onfusing the customer is the whole purpose of creating counterfeit goods."). Therefore, a plaintiff can establish likelihood of confusion by showing that the infringing mark is counterfeit. *Coach, Inc. v. Pegasus Theater Shops*, No. C12-1631-MJP, 2013 WL 5406220, at *3 (W.D. Wash. Sept. 25, 2013).

Accepting Plaintiffs' allegations as true, the Court finds that Plaintiffs have sufficiently stated their claim. P&G owns the Zevo Trademarks, and Defendants used the counterfeit Zevo marks without P&G's consent in commerce. Dkt. No. 1 ¶¶ 51, 54. As Defendants used counterfeit Zevo marks, their use of the marks is inherently confusing. Therefore, the Court finds the second and third *Eitel* factors favor a default judgment for P&G on its trademark counterfeiting and infringement claim.

b. Plaintiffs' False Designation of Origin Claim

Plaintiffs brought claims against Defendants for false designation of origin under 15 U.S.C. § 1125(a)(1)(A). Dkt. No. 1 ¶¶ 57–66.

To prevail on a claim for false designation of origin, "a plaintiff must prove that the defendant 1) used in commerce 2) any word, false designation of origin, false or misleading description, or representation of fact, which 3) is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question." *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1170 (N.D. Cal. 2015). A plaintiff is not required to own the trademarks that are infringed in order to state a claim under 15 U.S.C. § 1125(a). *See Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*, 310 F. Supp. 3d 1089, 1114 (S.D. Cal. 2018). And again, because counterfeit marks are inherently confusing, a plaintiff can show likelihood of confusion by showing the infringing mark is counterfeit. *Coach*, 2013 WL 5406220, at *3.

Accepting the allegations in Plaintiffs' complaint as true, the Court finds that Plaintiffs have shown that Defendants are liable on the claim for false designation of origin. P&G owns the right to the Zevo Trademarks. Dkt. No. 1 ¶ 58. Defendants sold counterfeit products bearing the Zevo Trademarks in commerce. *Id.* ¶ 61. Because Defendants' marks are counterfeits, they are likely to confuse or deceive as to the origin of the goods. *Id.* ¶¶ 61–62. Defendants' deceptive acts have also jeopardized its customers' trust in Amazon, tarnished Amazon's brand and reputation, and harmed Amazon and its customers. *Id.* ¶ 63. For these reasons, the second and third *Eitel* factors favor a default judgment for Plaintiffs on their false designation of origin claim.

c. Plaintiffs' CPA Claim

"To state a claim under the CPA, a plaintiff must allege: '(1) [an] unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in

his or her business or property; [and] (5) causation.'" *Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 976 (9th Cir. 2016) (quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986)). "Absent unusual circumstances, the analysis of a CPA claim will follow that of the trademark infringement and unfair competition claims; it will turn on the likelihood of confusion regarding a protectable mark." *Safeworks, LLC v. Teupen Am., LLC*, 717 F. Supp. 2d 1181, 1192 (W.D. Wash. 2010).

As the Court has found that Plaintiffs have sufficiently stated their trademark infringement claims, and alleged that Defendants used counterfeit versions of the Zevo Trademarks that are inherently confusing, the Court finds that Plaintiffs have stated a claim for violation of the CPA as well. Therefore, the Court finds that the second and third *Eitel* factors favor a default judgment for Plaintiffs on their CPA claim.

d. Amazon Services' Breach of Contract Claim

To prevail on a breach of contract claim, a plaintiff must show (1) a valid contract existed between the parties, (2) the contract was breached, and (3) damages resulted. *Lehrer v. State, Dep't of Soc. & Health Servs.*, 5 P.3d 722, 727 (Wash. Ct. App. 2000).

The complaint establishes all three of these elements. First, Amazon Services alleges that when Defendants established their selling account, they agreed to the BSA and Amazon's anti-counterfeiting policy and other policies, and these contracts are valid. Dkt. No. 1 ¶¶ 34–41, 73. Second, Amazon Services alleges that Defendants' sale of counterfeit Zevo-branded products constituted a material breach of the BSA. *Id.* ¶ 75. Third, Amazon Services alleges that Defendants' breach resulted in damages totaling $1,149,168.00—the amount that Amazon refunded to customers who purchased the counterfeit Zevo products sold by Defendants. Dkt. No. 22-2 ¶ 5. Accepting these allegations as true, Amazon Services has sufficiently stated its claims

for breach of contract. The Court thus finds the second and third *Eitel* factors favor a default judgment for Amazon Services on its breach of contract claim.

*3. The Sum of Money at Stake*

For the fourth *Eitel* factor, the Court considers the amount of money at stake in relation to the seriousness of the defendant's conduct. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). The Court also assesses whether the amount of monetary damage requested is proportional to the harm caused by the defendant. *See Curtis*, 33 F. Supp. 3d at 1212.

In this case, Plaintiffs allege that Defendants willfully infringed P&G's Zevo Trademarks and sold at least $1,313,981.00 of counterfeit products. *See* Dkt. No. 22-2 ¶ 3. The amounts Plaintiffs seek to recover are substantial, but proportional to the scale of the misconduct alleged, and the Court finds that this factor therefore favors entry of a default judgment.

*4. Possibility of Dispute over Material Facts*

For the fifth *Eitel* factor, the Court considers the possibility of dispute concerning material in facts. *Eitel*, 782 F.2d at 1471–72. Upon default, a plaintiff's factual allegations of the complaint will be taken as true. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). Because Defendants failed to appear or otherwise respond, they have failed to rebut Plaintiffs' allegations or evidence provided to support their claims. Therefore, given that no dispute of material facts is apparent, the Court finds that the fifth *Eitel* factor favors entry of a default judgment.

*5. Possibility of Excusable Neglect*

For the sixth *Eitel* factor, the Court assesses whether the defendant's default was due to excusable neglect. Here, the Court granted Plaintiffs' motion for alternative service and allowed Plaintiffs to serve Defendants by email. *See* Dkt. No. 15. Consistent with the Court's order, Plaintiffs subsequently provided an affidavit of service and confirmed that they received no error message or bounce-back. *See* Dkt. No. 16. Because Plaintiffs have submitted evidence to support

their attempts to serve Defendants, and yet Defendants have made no apparent effort to respond by the deadline, the Court finds that the sixth *Eitel* factor favors entry of a default judgment. *See Landstar Ranger, Inc. v. Parth Enters.*, 725 F. Supp. 2d 916, 922 (C.D. Cal. 2010).

*6. Policy in Favor of Decision on the Merits*

For the seventh *Eitel* factor, the Court addresses the strong policy preference in favor of resolution of Plaintiffs' claims on the merits. *See Eitel*, 782 F.2d at 1472 ("Cases should be decided upon their merits whenever reasonably possible."). However, a defendant's "failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177.

Thus, although the Court's preference for resolving issues on their merits weighs against entry of a default judgment, this factor is outweighed by the other *Eitel* factors, as summarized here. Accordingly, the Court finds that Plaintiffs' motion for default judgment should be granted.

**D. Plaintiffs Are Entitled to Damages.**

Having found that Plaintiffs are entitled to entry of a default judgment, the Court now turns to consider the relief requested by Plaintiffs.

*1. Statutory Damages to P&G*

The Lanham Act provides for three types of remedies in counterfeit trademark cases. *See Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1007 (9th Cir. 2023).

> When a plaintiff establishes a violation of any registered mark, subsection (a) makes available to the plaintiff, subject to equitable considerations, "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." [15 U.S.C.] § 1117(a). For intentional violations, subsection (b) provides for "three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee" and further specifies that "the court may award prejudgment interest on such amount[.]" § 1117(b). Subsection (c) allows a plaintiff to elect, "instead of actual damages and profits under subsection (a), an award of statutory damages" between $1,000 and $200,000 per counterfeit mark, or for a willful violation, up to $2,000,000 per counterfeit mark. § 1117(c).

*Id.* A willful trademark infringement occurs when "the defendant's actions are willfully calculated to exploit the advantage of an established mark." *DC Comics v. Towle*, 802 F.3d 1012, 1026 (9th Cir. 2015) (quoting *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993)). As the Court accepts all factual allegations as true when resolving a motion for default judgment, the Court accepts a plaintiff's allegation of a defendant's willful infringement. *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008).

Plaintiffs allege in their complaint that Defendants acted willfully by intentionally causing customer confusion regarding the origin and authenticity of the products sold. *See* Dkt. No. 1 ¶¶ 6, 13, 45, 62. With respect to this willful infringement, P&G elects to recover statutory damages. Dkt. No. 22 at 15–17. Specifically, P&G requests statutory damages totaling $3,941,943.00, which represents three times the Defendants' alleged aggregate sales of counterfeit Zevo products. Dkt. No. 22-2 ¶ 3.

To calculate statutory damages for willful infringement, courts consider the need to: (1) "compensate" the plaintiffs for the damage the defendant's actions caused; (2) "deter" the defendants from violating the trademarks; and (3) "punish" the defendants for willfully violating the trademarks. *See Philip Morris USA Inc. v. Liu*, 489 F. Supp. 2d 1119, 1124 (C.D. Cal. 2007). The Court finds that the statutory damages requested by P&G will compensate P&G for the harm caused by Defendants' conduct, punish Defendants for that conduct and deter it in the future. Accordingly, the Court will award P&G the statutory damages it requests.

*2. Actual Damages to Amazon*

Amazon seeks an award of actual damages on their breach of contract and false designation of origin claims. Dkt. No. 22 at 17–18. Upon discovering that Defendants breached the BSA by selling counterfeit products, Amazon shut down Defendants' Selling Accounts and issued refunds to customers who purchased counterfeit Zevo-branded products from Defendants. *Id.* Amazon

also alleges that Defendants have not fully reimbursed Amazon to cover the refunds it issued, although they agreed to do so in the BSA. *Id*. After accounting for funds that Amazon Services recovered from Defendants' sale proceeds or from the credit cards Defendants had on file with Amazon, Amazon seeks to recover actual damages in the amount of $1,149,168.00. Dkt. No. 22-2 ¶ 5. The Court finds this request reasonable and consistent with the terms of the BSA. *See* Dkt. No. 5-2 § 6.1.

Additionally, as discussed earlier in the previous subsection, the Lanham Act authorizes courts to award "any damages sustained by the plaintiff" arising from a defendant's false designation of origin. 15 U.S.C. § 1117(a). Amazon alleges that it incurred losses in refunding customers that were caused by Defendants' sale of counterfeit products. *See* Dkt. No. 22-2 ¶ 5.

The Court thus finds that Amazon is entitled to recover its actual damages in the amount requested under either the BSA or the Lanham Act.

**E. Plaintiffs Are Entitled to a Permanent Injunction.**

Plaintiffs request the Court permanently enjoin Defendants from their infringing uses of the Zevo Trademarks and from selling counterfeits in the Amazon store. Dkt. No. 1 at 18–19, Dkt. No. 22 at 18.

The Court has authority under 15 U.S.C. § 1116(a) to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable to prevent the violation of any right of the trademark owner. *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006). In addition, the CPA also allows parties to seek a permanent injunction to prevent further violations. WASH. REV. CODE § 19.86.090. A plaintiff seeking a permanent injunction must satisfy the following four elements. First, the plaintiff must show that it has suffered an irreparable injury. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Second, the plaintiff must show that remedies available at law, such as monetary damages, are inadequate to

compensate for the irreparable injury. *Id.* Third, the plaintiff must show that a remedy in equity is warranted considering the balance of hardships between the plaintiff and defendant. *Id.* Fourth, the plaintiff must show that the public interest would not be disserved by a permanent injunction. *Id.*

The Court finds that Plaintiffs have satisfied the first element, because a finding that a plaintiff's trademark has been infringed creates a rebuttable presumption that a plaintiff suffered an irreparable injury. *See* 15 U.S.C. § 1116; *T-Mobile USA, Inc. v. Terry*, 862 F. Supp. 2d 1121, 1133 (W.D. Wash. 2012). Defendants have not rebutted the presumption.

Plaintiffs also have satisfied the second element because they have shown that remedies at law are inadequate to compensate for their irreparable injury. Generally, monetary damages alone are inadequate to remedy trademark infringement. *Treemo, Inc. v. Flipboard, Inc.*, 53 F. Supp. 3d 1342, 1367 (W.D. Wash. 2014). Plaintiffs have alleged damage to their businesses, reputations, and goodwill that cannot be fully resolved via monetary damages. Dkt. No. 1 ¶¶ 56, 61, 63, 70.

Plaintiffs have satisfied the third element as well, as a balancing of hardship warrants a permanent injunction. On one hand, there is no legitimate interest in selling counterfeit products. *T-Mobile*, 862 F.Supp.2d at 1133–34. Therefore, there is no hardship for Defendants in this case. On the other hand, there are substantial threats to Plaintiffs' business reputation if the Court does not enjoin Defendants' illegal actions. *See* Dkt. No. 1 ¶¶ 56, 61, 63, 70. Thus, the balance of hardship tips in favor of Plaintiffs.

Finally, Plaintiffs have satisfied the fourth element, because a permanent injunction in this case would promote the public interest. A permanent injunction will benefit the public by preventing likelihood of confusion to consumers and minimizing the risk of purchasing fraudulent merchandise. *Treemo*, 53 F. Supp. 3d at 1368.

Because Plaintiffs have satisfied all four elements for a permanent injunction, the Court will grant Plaintiffs' request for a permanent injunction against Defendants.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion for default judgment. Dkt. No. 22.

1. Judgment will be entered as follows against Defendants on (1) P&G's cause of action for Trademark Counterfeiting and Trademark Infringement (15 U.S.C. § 1114), Plaintiffs' cause of action for False Designation of Origin (15 U.S.C. § 1125(a)), Plaintiffs' cause of action for Violation of the CPA, and Amazon.com Services LLC's cause of action for Breach of Contract.
2. The Court awards P&G statutory damages in the amount of $3,941,943.00 based on Defendants' willful violations of the Lanham Act for counterfeit sales from the Jomspo E&C Selling Account.
3. The Court awards Amazon a total of $1,149,168.00 for its actual damages caused by Defendants' breach of contract and false designation of origin under the Lanham Act due to the refunds Amazon issued to its customers who purchased counterfeit products sold by the Jomspo E&C Selling Account.
4. Defendants and their officers, agents, servants, employees, and attorneys, and all others in active concert or participation with them who receive actual notice of the order, are hereby permanently ENJOINED AND RESTRAINED from:
   a. selling counterfeit or infringing products in Amazon's stores;
   b. selling counterfeit or infringing products to Amazon or any Amazon affiliate;
   c. importing, manufacturing, producing, distributing, circulating, offering to sell, selling, promoting, or displaying any product using any simulation, reproduction,

counterfeit, copy, or colorable imitation of P&G's brand or trademarks, or which otherwise infringes P&G's intellectual property, in any store or in any medium; and

d. assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (c) above.

5. The Court hereby retains jurisdiction over this case for the purpose of enforcing this Order and Injunction, and for any supplemental proceedings that may be authorized by law.

6. Plaintiffs' counsel is hereby directed to serve a copy of this Order and Injunction on Defendants via the email addresses referenced in the Court's order approving alternative service. *See* Dkt. No. 15.

Dated this 6th day of November, 2026.

Kymberly K. Evanson
United States District Judge